USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

EM LTD. and NML CAPITAL, LTD.,

               Plaintiffs,

– against –

THE REPUBLIC OF ARGENTINA and
BANCO DE LA NACIÓN ARGENTINA,

               Defendants.

08 Civ. 7974 (TPG)

**OPINION**

------------------------------------------------x

EM LTD.,

               Plaintiff,

– against –

THE REPUBLIC OF ARGENTINA,

               Defendant.

03 Civ. 2507 (TPG)

------------------------------------------------x

NML CAPITAL, LTD.,

               Plaintiff,

– against –

THE REPUBLIC OF ARGENTINA,

             Defendant.

03 Civ. 8845 (TPG)
05 Civ. 2434 (TPG)
06 Civ. 6466 (TPG)
07 Civ. 1910 (TPG)
07 Civ. 2690 (TPG)
07 Civ. 6563 (TPG)
08 Civ. 2541 (TPG)
08 Civ. 3302 (TPG)
08 Civ. 6978 (TPG)

------------------------------------------------x

Plaintiffs move for reconsideration of the court's September 30, 2009 opinion. The motion is granted.

Plaintiffs move for leave to amend the separate "alter ego" action. The motion is granted.

Plaintiffs also move to confirm a portion of a May 2010 order of attachment, and the Republic of Argentina (the "Republic") cross-moves to vacate. Plaintiffs' motion is denied. The Republic's motion is granted.

## **Procedural History**

On September 12, 2008, the court signed orders attaching and restraining certain assets of BNA and the Republic. Plaintiffs sought to attach BNA's assets on the theory that BNA was the alter ego of the Republic. The orders directed to BNA covered (1) BNA's "asset pledge" deposit and accounts established pursuant to Section 202-b(1) of the New York Banking Law,[1] and (2) the "right, claim and/or entitlement to recover any amounts, assets, funds or property pursuant to Sections 605(11) or 606(4) of the New York Banking Law at the conclusion of any voluntary winding up or involuntary liquidation of the New York Branch of BNA."[2] Both of these types of BNA assets will be referred to as "asset pledge accounts."

---

[1] Section 202-b(1) of the Banking Law provides that foreign banks shall keep on deposit at banks in New York assets in an amount "necessary or desirable for the maintenance of a sound financial condition, the protection of depositors and the public interest, and to maintain public confidence in the business of" the bank.
[2] Section 605(11) of the Banking Law provides, in relevant part, that any "foreign banking corporation which has been licensed . . . to engage in business in this state . . . may, if it so desires, take proceedings for the voluntary liquidation of its business and

- 2 -

Plaintiffs also sought to attach any assets of the Republic held in BNA's custody. Two types of the Republic's assets were uncovered in BNA's accounts: (1) over $3.2 million held on behalf of the Agencia Nacional de Promocion Cientifica y Tecnologica ("ANPCT"), a division of the Republic's Ministry of Science, Technology, and Productive Innovation; and (2) approximately $2,000 held by the Instituto Nacional de Tecnologia Agropecuaria ("INTA").

On September 15, 2008, three days after the entry of the orders, plaintiffs filed a separate action against BNA and the Republic, seeking (1) a declaratory judgment that BNA is the Republic's alter ego, and (2) money judgments holding BNA, as the Republic's alter ego, jointly and severally liable for the debts owed to plaintiffs by the Republic.

There were then various cross-motions filed regarding the September 2008 attachments and restraints and the alter ego action.

On September 30, 2009, the court handed down an opinion on these motions. The court ruled that BNA was not the alter ego of the Republic. The court found that the Republic does not control the day-to-day operations of BNA. While there was evidence that the Republic sometimes required BNA to do financing for certain economic sectors of the country and for particular businesses, this did not add up to a degree of de facto ownership or control of BNA's funds sufficient to justify

---

property in this state . . . ." Section 606(4)(b) provides that after an involuntary liquidation has occurred, and state regulators have used the bank's assets to pay claims of any creditors, "any [remaining] assets of the foreign banking corporation . . . shall be turned over to the principal office of such foreign banking corporation . . . ."

an alter ego ruling. However, the court did state that something much closer to the alter ego territory occurred in late 2008 when the Republic procured a change in the law governing the bank's charter which greatly loosened the restrictions on the ability of the Republic to borrow money from BNA. Nevertheless, the alleged law offered only the potential for the Republic to use BNA's funds effectively as the Republic's own; the record did not show any actual use by the Republic of this apparent expanded power to borrow from BNA. Accordingly, the court concluded that "even the evidence about the expanded power of the Republic to borrow from BNA is not sufficient to justify holding that BNA was or is the alter ego of the Republic." It is important to note that the court relied on plaintiffs' representation that the late 2008 proposed law was the version passed by the Argentine government.

On the basis of this ruling, the court vacated the attachments and restraints of the asset pledge accounts, which were the BNA assets at issue at that time.

As to the Republic's assets, the court confirmed the restraining orders that covered the ANPCT account but denied the orders as they related to the INTA account. Although the court confirmed the post-judgment restraining orders as they related to the ANPCT account, the court neglected to confirm the pre-judgment attachment orders for that account, a mistake that is now being corrected, as later discussed.

The court dismissed the separate alter ego action against BNA and the Republic.

On October 15, 2009, plaintiffs moved for reconsideration challenging all of the court's rulings regarding BNA in the September 30, 2009 opinion. The motion also sought to confirm the pre-judgment attachment of the ANPCT account.

On May 28, 2010, plaintiffs sought a new attachment order directed to property previously covered by the September 2008 orders, and certain additional properties. In regard to property of BNA, plaintiffs sought to introduce new evidence to support their assertion that BNA was the alter ego of the Republic as of May 2010. The Republic now allegedly had actually used the apparent expanded power under the late 2008 legislation to borrow money from BNA with lessened restrictions.

Based on this new information, the court issued a new attachment order on May 28, 2010 on the ground that it was probable that plaintiffs would succeed on the merits as to the alter ego issue. On that same date, the court sent a memorandum to counsel inviting additional briefing on the pending October 15, 2009 motion for reconsideration. The parties later submitted supplemental briefs.

Plaintiffs also moved on May 28, 2010 for leave to amend the September 15, 2008 alter ego complaint.

On June 30, 2010, plaintiffs moved to confirm the May 28, 2010 attachment order. On July 30, 2010, defendants cross-moved to vacate the May 28, 2010 attachment order.

Subsequently, plaintiffs notified the court that they were no longer seeking to confirm the orders that they had obtained against the assets of BNA. This occurred in plaintiffs' supplemental brief on the motion for reconsideration, dated September 3, 2010. In this brief, plaintiffs (1) withdrew their request for reconsideration of the September 30, 2009 opinion insofar as it related to the attachment and restraint of any property of BNA, and (2) withdrew their motion to confirm the May 28, 2010 attachment orders insofar as it related to the attachment of any property of BNA.

In their September 2010 brief, plaintiffs acknowledged that they made an error in relying on proposed legislation introduced by Argentine President Fernández de Kirchner that would have amended BNA's charter by eliminating the special guarantee requirement for loans from BNA to the Republic. On November 21, 2008, a revised version of the legislation was actually signed into law, which did not eliminate the special guarantee requirement in BNA's charter. In fact, the law ratified the requirement of the special guaranties contained in BNA's charter. This court had adopted plaintiffs' erroneous description in its September 30, 2009 opinion.

On September 23, 2010, the court signed a stipulation and consent order vacating the September 12, 2008 and May 28, 2010 orders as they related to property of BNA. As a result, no attachments, restraints, or other restrictions remain on any property of BNA.

It is necessary to set forth what remains of the October 15, 2009 motion for reconsideration. In their brief of September 3, 2010, plaintiffs assert that they still seek reconsideration of the court's September 30, 2009 opinion in two respects. First, plaintiffs assert that BNA's motion to dismiss the alter ego complaint should be denied because the September 30, 2009 opinion did not recite nor apply the controlling legal standards. Second, NML submits that the court should correct what appeared to be an error in the September 30, 2009 opinion in failing to confirm the pre-judgment <u>attachment</u> of the ANPCT account, and only confirming the post-judgment <u>restraint</u> of that account.

As already stated, plaintiffs move to confirm the May 28, 2010 attachment order. Due to the concessions plaintiffs have made, the only phase of that motion currently remaining relates to the ANPCT account. The Republic cross-moves to vacate the May 28, 2010 order with respect to the ANPCT account.

Also before the court, as previously stated, is plaintiffs' motion for leave to amend the September 15, 2008 alter ego complaint.

**Discussion**

Motion for Reconsideration

ANPCT Account

One aspect of the motion for reconsideration of the September 30, 2009 opinion can be dealt with easily. In that opinion it was a mistake not to confirm the pre-judgment attachment of the ANPCT account, and only to confirm the post-judgment restraint of such account. Plaintiffs' motion for reconsideration is granted to the extent that the court now rules that the attachment as well as the restraint is confirmed.

The Alter Ego Suit

It is now necessary to deal with plaintiffs' request for reconsideration of the court's dismissal of the separate alter ego action.

Plaintiffs start by asserting that in its September 30, 2009 opinion the court did not fully articulate the basis for the dismissal of the alter ego action. There is merit to this argument. In the September 30, 2009 opinion the court made findings of fact which were necessary to determine whether the attachments and restraints of BNA assets should be confirmed or vacated. In this regard, the critical issue was whether BNA was the alter ego of the Republic so that particular assets of BNA could be deemed to be assets of the Republic. In dealing with this issue, the court's findings of fact led to the conclusion that BNA was not the alter ego of the Republic. The court vacated the attachments and restraints as to BNA assets. The court went on to rule, on the basis of

these factual findings and this conclusion, that the complaint in the separate alter ego action should be dismissed. The court did not state whether it was doing this pursuant to Fed. R. Civ. P. 12 or was granting summary judgment under Rule 56.

Plaintiffs now argue that if a proper standard is applied under the Federal Rules, the alter ego action cannot properly be dismissed. Defendants, of course, take the contrary view.

The court's position is different from what is urged by either side. The court believes that there are questions about subject-matter jurisdiction, none of which were addressed in the September 30, 2009 opinion, but which should be addressed now. In this connection, there was surely subject-matter jurisdiction to determine whether BNA had alter ego status sufficient to support the attachments and restraints of assets of BNA, and the court believes that this provides subject-matter jurisdiction for an alter ego claim in a separate action. However, plaintiffs have now agreed that such attachments and restraints of BNA assets should be vacated, because of a substantial error in plaintiffs' presentation. This removes the basis just described for the court's subject-matter jurisdiction over the alter ego declaratory judgment claim in the separate action.

Now it is necessary to turn to what <u>plaintiffs allege</u> as the basis for subject-matter jurisdiction over their declaratory judgment claim. That

claim is set forth as Count I in both the original complaint and the proposed amended complaint. Both complaints allege:

> A justiciable and actual controversy exists before this Court with respect to whether BNA is the alter ego of Argentina. A declaratory judgment resolving this question is likely to (1) prevent future harm to EM and NML resulting from Argentina's abuse of BNA's nominal independence to shield its assets from its creditors, (2) clarify or settle the legal rights of the parties to this action, and/or (3) terminate a principal source of the insecurity and/or controversy that brought about this action.

A further allegation in the declaratory judgment count (Count I) is that giving effect to BNA's nominal separateness from the Republic would unjustly deprive EM and NML of the ability to recover "tens of millions of dollars worth of assets located in New York." Of course, plaintiffs now are not seeking to recover on any such assets.

In the view of the court, there is a most serious question about whether the allegations provide a sufficient jurisdictional basis now that the orders attaching and restraining BNA assets have been voluntarily set aside.

The court requests briefing on the issue of subject-matter jurisdiction, dealing, among other things, with the current circumstance that the attachments and restraints are gone.

There is another issue which is closely connected to the alter ego issue, although it may go more to the merits of certain claims rather than to subject-matter jurisdiction. Both the original complaint and the proposed amended complaint allege that BNA, as the alter ego of the

- 10 -

Republic, should be adjudged jointly and severally liable for all the amounts awarded and to be awarded to EM and NML in judgments against the Republic based on the Republic's default on its bond indebtedness. There are counts specifically requesting that BNA be held liable, along with the Republic, for certain specific judgment debts totaling over $1 billion, and there are other counts requesting that BNA be held liable, along with the Republic, for the amounts of judgments to be entered in the future.

In the view of the court, aside from all the other problems with the alter ego theory, articulated in its September 30, 2009 opinion, there is a most serious question as to whether allegations can be allowed to stand, which claim to impose the Republic's huge defaulted debt obligations on BNA.

The court vacates its dismissal of the separate alter ego action.

Motion to Amend

The court grants the motion to amend the complaint in the separate alter ego action. The court will entertain a motion to dismiss this amended complaint, on grounds raised regarding the original complaint and any new issues, including subject-matter jurisdiction.

Motion to Confirm

May 28, 2010 Order

The setting for the May 28, 2010 order of attachment needs to be recalled. In September 30, 2009, the court had rejected the theory that

BNA was the alter ego of the Republic and had vacated the attachments and restraints as to BNA assets. Plaintiffs moved for reconsideration in October 2009. In addition, plaintiffs came to the court in May 2010, alleging that there was new information indicating that, at least as of May 2010, BNA was the alter ego of the Republic. They applied for a single order of attachment, covering not only the BNA assets, but also the ANPCT account belonging directly to the Republic. The court approved plaintiffs' application and a new attachment order was entered.

As earlier described, by now plaintiffs have consented to having the May 28, 2010 order vacated as to BNA assets, and thus there is no longer any motion to confirm the order as to these assets.

However, there still remains the motion to confirm the May 28, 2010 order as to the ANPCT account, and the Republic's cross-motion to vacate.

In the view of the court, there could be no <u>new</u>, valid attachment of the ANPCT account on May 28, 2010. The account belonged, of course, to the Republic. But, even so, under the Foreign Sovereign Immunities Act, the asset could not be attached unless it was being used for commercial activity at that time. 28 U.S.C. § 1610(a). The account had been frozen since September 2008 and was not being used for commercial activity in May 2010.

## Conclusions

The court reaches the following conclusions regarding the motions now before it, after the withdrawal of certain applications as described in the opinion.

The court grants plaintiffs' October 15, 2009 motion for reconsideration, vacates the dismissal of the separate alter ego action, and confirms the validity of the attachment of the ANPCT account as of September 12, 2008.

The court grants the motion to amend the complaint in the separate alter ego action.

The court denies the motion to confirm the May 28, 2010 order attaching the ANPCT account as of May 28, 2010 and grants the Republic's cross-motion to vacate.

This opinion resolves the motions listed as document numbers 97, 111, 112, 116, 123, and 129 in the case with docket number 08 Civ. 7974, as well as the same motions listed on the related docket numbers.

SO ORDERED.

Dated: New York, New York
       September 30, 2010

*/s/ Thomas P. Griesa*
Thomas P. Griesa
U.S.D.J.