**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of March, two thousand twelve.

Before:  DENNIS JACOBS,
  *Chief Judge,*
  JOSÉ A. CABRANES,
  RICHARD C. WESLEY,
  *Circuit Judges.*

_____

NML CAPITAL, LTD., EM LTD.,

  Plaintiffs-Appellees,

  v.

THE REPUBLIC OF ARGENTINA,

  Defendant-Appellant.

_____

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: | |
| DATE FILED: April 20, 2012 | |

JUDGMENT
Docket Nos.:  10-4450 (Lead),
  10-4452 (Con.),
  10-4475 (Con.),
  10-4486 (Con.),
  10-4488 (Con.),
  10-4490 (Con.),
  10-4491 (Con.),
  10-4492 (Con.),
  10-4493 (Con.),
  10-4495 (Con.),
  10-4506 (Con.)

The appeal in the above captioned case from a judgment of the United States District Court for the Southern District of New York was submitted on the district court's record and the parties' briefs.  Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's judgment is AFFIRMED, in accordance with the opinion of this court.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 04/20/2012

10-4450-cv(L)
*NML Capital, Ltd. v. Republic of Argentina*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: December 7, 2011                    Decided: March 30, 2012)

Docket Nos. 10-4450-cv (L), 10-4452-cv (CON), 10-4475-cv (CON), 10-4486-cv (CON), 10-4488-cv (CON), 10-4490-cv (CON), 10-4491-cv (CON), 10-4492-cv (CON), 10-4493-cv (CON), 10-4495-cv (CON), 10-4506-cv (CON)

———————

NML CAPITAL, LTD., EM LTD.,

*Plaintiffs-Appellees*,

v.

THE REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

———————

Before: JACOBS, *Chief Judge*, CABRANES and WESLEY, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), granting and confirming attachment and restraining orders against a New York bank account owned by the *Agencia Nacional de Promoción Científica y Tecnológica* ("ANPCT"), an instrumentality of the Republic of Argentina, pursuant to the commercial use exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq*.  The District Court correctly held that the funds in the ANPCT Account were subject to attachment pursuant to 28 U.S.C. § 1610 because they were "used for a commercial activity in the United States."  28 U.S.C. § 1610(a).

Affirmed.

1

MATTHEW D. MCGILL (Theodore B. Olson, *on the brief*), Gibson, Dunn & Crutcher LLP, Washington, D.C.; (Robert A. Cohen & Dennis H. Hranitzky, *on the brief*), Dechert LLP, New York, NY, *for Plaintiff-Appellee NML Capital, Ltd.*

David W. Rivkin (John B. Missing & Suzanne M. Grosso, *on the brief*), Debevoise & Plimpton LLP, New York, NY, *for Plaintiff-Appellee EM Ltd.*

JONATHAN I. BLACKMAN (Carmine D. Boccuzzi, Christopher P. Moore, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellant Republic of Argentina.*

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether certain funds owned by the Republic of Argentina (the "Republic" or "Argentina") were subject to attachment pursuant to 28 U.S.C. § 1610 because they were "used for a commercial activity in the United States." 28 U.S.C. § 1610(a).[1] To resolve this question, we must decide whether the Republic's payment of the purchase price of commercial goods to a seller on behalf of a third party recipient constitutes a "commercial activity" under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*[2]

This appeal arises from a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), granting and confirming attachment and restraining orders

---

[1] In pertinent part, 28 U.S.C. § 1610(a) provides that "[t]he property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment . . . or from execution . . . if (1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication." 28 U.S.C. § 1610(a). Argentina has waived its immunity from attachment. *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 480–81 & n.18 (2d Cir. 2007).

[2] We note that, unlike the more frequently-litigated § 1605, § 1610 does not require that the commercial activity giving rise to jurisdiction be related to the action itself. *Compare, e.g.*, 28 U.S.C. § 1605(a)(2) ("A foreign state shall not be immune from . . . jurisdiction . . . in any case . . . (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . ."), *with id.* § 1610(a), *ante.*

2

against a bank account[3] owned by the *Agencia Nacional de Promoción Científica y Tecnológica* ("ANPCT"), an instrumentality of the Republic, pursuant to the commercial use exception to the FSIA.

## BACKGROUND

Plaintiffs-appellees NML Capital, Ltd. ("NML") and EM Ltd. ("EM") (jointly, the "plaintiffs") have acquired on the secondary market hundreds of millions of dollars of non-performing bonds issued by the Republic.[4] In due course, the plaintiffs began to bring suit in United States courts to collect the debt. In these eleven consolidated appeals, they moved to attach a New York bank account owned by ANPCT, a sub-unit of Argentina's Ministry of Science, Technology, and Productive Innovation. ANPCT asserts that it employs this account (the "ANPCT Account" or the "Account") for the sole purpose of purchasing scientific equipment for use by grant beneficiaries. Beneficiaries contract with equipment sellers directly, and receive the purchased goods directly from the sellers; ANPCT's only involvement is to remit the prearranged payment to the sellers.

On September 12, 2008, the plaintiffs, moving on an *ex parte* basis, sought and obtained from the District Court restraining orders (for the actions that had reached final judgment) and attachment orders (for the actions in the pre-judgment phase) seizing the ANPCT Account. On that date, the Account contained more than $3.26 million. On September 30, 2009, the District Court confirmed the restraining orders (but not the attachment orders) to the extent they related to the ANPCT Account, holding that the Account was attachable under § 1610 of the FSIA. *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 3302, Docket No. 171, at 16 (S.D.N.Y. Sept. 30, 2009)[5]; *see* note 1, *ante*. The

---

[3] The bank account is held at the New York branch of the *Banco de la Nación Argentina*.

[4] We assume familiarity with the facts and procedural history of the various recent disputes over the attachment of bank funds held by the Republic of Argentina, *see, e.g.*, *NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172, 175–76 (2d Cir. 2011); *EM Ltd.*, 473 F.3d 463, and the special place of the Republic in the history of the law and diplomacy of default, *see EM Ltd.*, 473 F.3d at 466 n.2.

District Court reasoned that under "the most rudimentary definition," the Account is "used for commercial activity" because "ANPCT funds have been used to purchase scientific equipment." *Id.* The District Court further explained that by using the Account to buy equipment, the Republic was "acting as a 'private player' in the marketplace, in the same way as any private party engaging in commerce." *Id.*

The plaintiffs subsequently moved for reconsideration with respect to the pre-judgment attachment orders as they related to the ANPCT Account. On September 30, 2010, the District Court acknowledged its "mistake" and confirmed the attachments of the ANPCT Account.

The Republic now appeals the underlying restraining and attachment orders, as well as the orders confirming the restraint and attachment of the ANPCT Account, claiming that the District Court should have granted it immunity from execution pursuant to the FSIA.

## DISCUSSION

### I. Standard of Review

We review *de novo* legal conclusions denying FSIA immunity to a foreign sovereign or its property. *See Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001). A district court's ruling on a request for an order of attachment is reviewed for abuse of discretion. *Aurelius Capital Partners*, 584 F.3d at 129; *see EM Ltd.*, 473 F.3d at 472. A district court is said to have abused its discretion if it has (1) "based its ruling on an erroneous view of the law," (2) made a "clearly erroneous assessment of the evidence," or (3) "rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and quotation marks omitted).

---

[5] The full text of the District Court's order is available under the caption of a related case. *See EM Ltd. v. Republic of Argentina*, No. 08 Civ. 7974 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009).

## II. The ANPCT Account Was Used for "Commercial Activity"

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). As a general matter, the property of a foreign state present in the United States is immune from execution in satisfaction of a debt. Such property may be attached and executed upon only when one of the FSIA's exceptions applies. 28 U.S.C. § 1609;[6] *see Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir. 1984) ("[U]nder [28 U.S.C.] § 1609 foreign states are immune from execution upon judgments obtained against them, unless an exception set forth in §§ 1610 or 1611 of the FSIA applies.").[7]

Subsections 1610(a) and (d), the applicable exceptions in this case, provide that when the foreign state has "waived its immunity" from attachment and execution, a court may attach or execute upon property that the sovereign "used for commercial activity in the United States." 28 U.S.C. § 1610(a) (post-judgment); *id.* § 1610(d) (pre-judgment). The Republic has waived its immunity, *see EM Ltd.*, 473 F.3d at 480–81 & n.18, and does not dispute that ANPCT is responsible for the Republic's debts. The only question on appeal is whether the Republic "used" the ANPCT Account "for a commercial activity in the United States" under § 1610. Stated another way, we must decide whether the Republic's remittance to a seller of goods of a prearranged purchase price for those goods, which are then conveyed directly from the seller to a third party—returning no tangible benefit to the Republic—constitutes activity "in the market." We hold that it does.

---

[6] In full, 28 U.S.C. § 1609 provides that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act[,] the property in the United States of a foreign state shall be immune from attachment[,] arrest[,] and execution except as provided in sections 1610 and 1611 of this chapter."

[7] We note that 28 U.S.C. § 1611, which exempts certain types of property from attachment, is not applicable here.

5

### A. Commercial Activity

The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* The legislative history of the FSIA "explicitly asserts the congressional intention to leave to the 'courts . . . a great deal of latitude in determining what is a commercial activity for purposes of [the FSIA].'" *Kato v. Ishihara*, 360 F.3d 106, 110 (2d Cir. 2004) (quoting H.R. Rep. No. 94-1487, at 16 (1976)) (ellipses and alteration in original).

To determine the nature of a sovereign's act, we ask "'whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce.'" *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 177 (2d Cir. 2010) (quoting *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)) (internal quotation marks omitted). We begin by "examining the act of the foreign sovereign that serves as the basis for the plaintiff's claim." *Id.*

In this case, the allegedly commercial act of the foreign sovereign is the purchase of scientific equipment. In *Weltover*, the Supreme Court concluded that when a sovereign purchases goods in the market, it has engaged in a "commercial activity" because such a purchase is "the *type* of action[] by which a private party engages in trade and traffic or commerce." *Weltover*, 504 U.S. at 614 (internal quotation marks omitted). Thus, the Supreme Court noted that "a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods." *Id.* at 614–15.

6

We reached a similar conclusion in *Texas Trading & Mill. Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981), in which we considered whether Nigeria's purchase of cement qualified as a "commercial activity." *Id.*, *overruled on other grounds by Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009). Because Nigeria's activity was "in the nature of a private contract for the purchase of goods," we held that "[i]ts purpose to build roads, army barracks, whatever[,] is irrelevant." *Id.* at 310. Accordingly, we concluded that Nigeria's cement purchase program constituted "commercial activity." *Id.*

### B. The Governmental Purpose of the Commercial Activity Is Irrelevant

Relying on *Letelier v. Republic of Chile*,[8] the Republic argues that the "essential nature" of the Republic's payments to equipment sellers is sovereign because the equipment is purchased in order to implement a national program of scientific research and development.[9] As noted above, ANPCT does not negotiate contracts with the sellers, nor does it take delivery of the equipment—all such logistical matters are handled by the research facilities for whom the Republic purchases the equipment. According to the Republic, ANPCT "merely performs grant-making functions" by conveying the purchase price to the sellers.

The Republic's argument is unavailing. The "essential nature" argument rests on the governmental purpose of the purchases and the absence of a profit motive in the program. But neither is relevant to the commercial activity analysis. *See* 28 U.S.C. § 1603(d) ("The commercial character of

---

[8] *See Letelier*, 748 F.2d at 796 (noting that "Congress intended the 'essential nature' of given behavior to determine its status for purposes of the commercial activities exception, and gave the courts a 'great deal of latitude' to decide this issue." (quoting H.R. Rep. No. 94-1487, at 16)).

[9] The Republic leans heavily on our decision in *Kato v. Ishihara* to support the argument that the ANPCT has not undertaken "commercial activity" here because the payments are not made "on its own behalf," *Kato*, 360 F.3d at 112. But *Kato* involved alleged sexual harassment that the plaintiff suffered while engaging in "promotional activities on behalf of Japanese companies" in New York. *Id.* at 109. The Republic has identified no authority for the proposition that the purchase of goods in the market is not commercial activity.

7

an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."). The Supreme Court has held that "a state engages in commercial activity . . . where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (quoting *Weltover*, 504 U.S. at 614); *see also* H.R. Rep. No. 94-1487, at 14 (1976) ("[T]he sovereign immunity of foreign states should be 'restricted' to cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform."). In other words, the relevant inquiry concerns the power that is exercised, rather than the motive for its exercise.[10]

Indeed, in *Texas Trading* we directly considered activity having a public purpose, and we noted that "[d]ictum in [our pre-FSIA cases] states that a contract made by a government for a public purpose, *e.g.*, bullets for the army, is not 'commercial activity.'" *Tex. Trading & Mill. Corp.*, 647 F.2d at 310 n.27. But we expressly held that "[t]his aspect of prior American law has been overruled by the FSIA, and the definition of 'commercial activity' has been concomitantly expanded to include such contracts." *Id.*; *see also Weltover*, 504 U.S. at 612–14. It is eminently clear that the governmental purpose of the commercial activity does not immunize the ANPCT Account from attachment and execution, if it is "commercial activity" within the meaning of the FSIA.[11]

---

[10] The Republic's argument that it was not acting as a "merchant in the marketplace" is similarly unavailing. A party need not be a merchant in order to engage in commercial activity. *See, e.g.*, *Tex. Trading & Mill. Corp.*, 647 F.2d at 310 (finding that Nigeria had engaged in commercial activity despite being the end recipient of goods rather than a merchant engaged in trade).

[11] We do not consider, much less decide, the question of whether funds held by a foreign sovereign in a United States bank account for the exclusive or primary purpose of conducting consular or diplomatic functions would be subject to attachment under the FSIA. The attachment of such funds is subject to a different analysis under the FSIA and either the Vienna Convention on Diplomatic Relations and Optional Protocol on Disputes, 23 U.S.T. 3227, Apr. 18, 1961, T.I.A.S. No. 7502, or the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820. *See, e.g.*, *Liberian E. Timber Corp. v. Gov't of Republic of Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987).

We addressed the issue of profit motive in *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 149–50 (2d Cir. 1991), *aff'd Weltover*, 504 U.S. 607. In *Weltover*, we rejected the Seventh Circuit's characterization of *Letelier* as "requir[ing] a showing that the activities could be conducted by a private person and that the foreign sovereign has a profit motive." *Id.* (citing *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 578 n.4 (7th Cir. 1989)) (emphasis omitted). We observed that "[s]uch a requirement would eviscerate the 'commercial activity' exception of the FSIA, because foreign sovereigns often act without a profit motive." *Id.* at 150. We accordingly held that "[w]hen a foreign sovereign engages in [conduct in which a private party would customarily engage for profit], that activity retains its commercial nature, even though the foreign sovereign acts without a profit motive." *Id.*; *see also Weltover*, 504 U.S. at 614. As the Republic itself acknowledges, pharmaceutical companies regularly purchase scientific equipment for researchers in exchange for the prospect of profiting from the researchers' findings. Although not taken with a profit motive, the arrangement ANPTC has with Argentine scientists is otherwise no different from such enterprises. The Republic's lack of a profit motive is simply irrelevant.

To reiterate, Argentina's asserted eleemosynary or governmental motives do not change the fact that the ANPCT Account is used to *purchase* scientific equipment. A "private party engage[d] in trade and traffic or commerce" can purchase scientific equipment. *Weltover*, 504 U.S. at 614 (internal quotation marks omitted). "[I]t is irrelevant *why* Argentina" made the purchases "in the manner of a private actor; it matters only that it did so." *Id.* at 617. The "commercial use" requirement of the FSIA is satisfied, and the Republic may not claim sovereign immunity as to the funds in the ANPCT Account.

## CONCLUSION

For the foregoing reasons, the District Court's attachment and restraining orders are affirmed.

9